Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Ave. Suite 500
Burbank, CA 91505
Tel: (310) 474-9111

[Additional counsel appear on signature page]

*Attorneys for Plaintiffs and the Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHASE BUCHANAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CENTURY CITY MALL, LLC; WESTFIELD, LLC; WESTFIELD PROPERTY MANAGEMENT, LLC; URW AMERICA, INC. and SKIDATA, INC.;<br>Defendants. | Case No.: 2:26-cv-04324–SVW–SK<br><br>AMENDED CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiffs Chase Buchanan and Christopher Melendez ("Plaintiffs"), through counsel, bring this Amended Complaint against Defendants Century City Mall, LLC ("Century City"), Westfield, LLC ("Westfield"), Westfield Property Management, LLC ("Westfield Management"), and URW America, Inc. ("URW America") (together, "URW") as well as Defendant SKIDATA, Inc. ("SKIDATA") (collectively, "Defendants"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the

allegations specifically pertaining to themselves, which are based on personal knowledge.

## NATURE OF THE ACTION

1. Entities that collect and amass license plate data assume certain statutory responsibilities, including duties as to how they store, use, and share that information.

2. Automated License Plate Reader systems ("ALPR") are highspeed cameras with accompanying software that record, capture, analyze and store information about vehicles' makes, models, and license plate numbers. These cameras can capture photographs of an entire vehicle, including its occupants, and record the dates and times of such photographs.

3. In 2015, in response to concerns that "[t]he right to privacy is being threatened by the indiscriminate collection, maintenance, and dissemination of personal information" and that "[t]he increasing use of computers and other sophisticated technology has greatly magnified [that] risk" the California legislature enacted Senate Bill 34 ("SB 34," codified at Cal. Civ. Code §§ 1798.90.5 *et seq.*), permitting ALPR technology, but placing clear limits on the capture, use, storage, and sharing of ALPR data.

4. The two key components of SB 34 require that ALPR operators and end-users (1) "[m]aintain reasonable security procedures and practices, including operational, administrative, technical, and physical safeguards, to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure," and (2) "[i]mplement a usage and privacy policy in order to ensure . . . respect for individuals' privacy and civil liberties." § 1798.90.51(a)-(b).

5. Defendant URW is a commercial real estate conglomerate that contracts with Defendant SKIDATA to install and maintain ALPR technology at its parking facilities throughout the state of California. Defendants URW and SKIDATA are, therefore, ALPR operators and end-users.

6. Despite this status, SKIDATA does not have a statutory-compliant ALPR usage and privacy policy "available to the public in writing," or which is "posted conspicuously on [its] Internet Web site," in violation of Cal. Civ. Code § 1798.90.51(b) and Cal. Civ. Code § 1798.90.53(b).

7. Additionally, URW's usage and privacy policy does not contain all the components mandated by Cal. Civ. Code § 1798.90.51(b) and Cal. Civ. Code § 1798.90.53(b).[1]

8. Because SKIDATA and URW fail to maintain adequate ALPR usage and privacy policies, the sharing of data between the Defendants, as well as to other entities, is a failure to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure in violation of Cal. Civ. Code § 1798.90.51(a) and Cal. Civ. Code § 1798.90.53(a).

9. As set forth below, Plaintiffs assert claims on behalf of themselves, and all others similarly situated against Defendants for their violations of Cal. Civ. Code §§ 1798 *et seq.*

## THE PARTIES

***Plaintiff Chase Buchanan***

10. Plaintiff Chase Buchanan is a natural person and citizen of the State of California. Plaintiff Buchanan resides in Los Angeles in Los Angeles County, California.

11. At all relevant times herein, Plaintiff is and has been a resident of the

---

[1] *See* ALPR Usage and Privacy Policy, WESTFIELD CENTURY CITY, https://www.westfield.com/en/united-states/centurycity/alpr-usage-privacy-policy (last accessed Mar. 10, 2026) (hereinafter "ALPR Policy"). Notably, the ALPR Policy fails to include "a description of the job title or other designation of the employees and independent contractors who are authorized to access and use ALPR information," as well as the "training requirements necessary" for those personnel. § 1798.90.53(b)(2). Moreover, the ALPR Policy offers only vagueries as to System Monitoring, failing to include "compliance with all applicable privacy laws and a process for periodic system audits." *Id.* The ALPR Policy also fails to specify the processes for sharing ALPR information and sharing restrictions. *Id.* Lastly, the ALPR Policy fails to include a description for "reasonable measures that will be used to ensure [] accuracy . . . and correct data errors," instead simply stating that URW will utilize "[r]easonable technical measures including regular testing." *Id.*

community surrounding Defendant Century City Mall community and has parked in the Westfield Century City parking lot.

12. Plaintiff has visited and subsequently parked in the parking lot of Westfield Century City on numerous occasions per year, with Plaintiff's most recent parking visit occurring in or around late 2025. Plaintiff has been required to pay for parking at the Westfield Century City location parking lot for each of his previous visits.

13. Upon information and belief, Defendants' ALPR system used in Westfield parking lots, such as that at Century City Mall, has captured, documented and analyzed Plaintiff Buchanan's vehicle's license plate numbers without obtaining Plaintiff's express consent, nor was Plaintiff notified of the ALPR's purpose.

14. Upon information and belief, Plaintiff Buchanan did not know and was unaware of Defendants' use of ALPR systems to record and analyze Plaintiff's vehicle's license plate numbers. Likewise, Plaintiff was never presented with a notice of Defendants' ALPR practice about a) the authorized purposes for using ALPR systems; b) a description of the job title or other designation of the individuals authorized to use or access the ALPR system data; c) a description of how the ALPR system's privacy and security measures operate and record license plate data; d) training requirements for all necessary and authorized individuals with access to the license plate data; e) the title of the Custodian of the Parking Lot's ALPR data; f) a description of the reasonable measures used to ensure the accuracy of the ALPR information; and g) how long the information is retained.

15. Without knowledge or information of the ALPR systems and the safety measures put into place to protect consumer information or inform consumers what their information may be used for, Plaintiff did not and could not know the potential harm Defendants could impose by collecting his license plate information.

16. Plaintiff suffered actual damages as a result of Defendants' alleged conduct. Namely, on multiple occasions Plaintiff has paid to park at the Westfield

Century City parking lot. Plaintiff has been under the belief that he paid the Westfield parking lot parking rate fee in exchange for its service in allowing Plaintiff to safely store his vehicle in the Westfield parking lot. Defendants, however, have additionally gained access to Plaintiff's personal information via the ALPR systems without notifying Plaintiff.

17. Plaintiff Buchanan has additionally been harmed as a result of Defendants' conduct as alleged herein. Had Defendants chosen to disclose the use and purpose of ALPR systems within its parking lots, Plaintiff may have been more cautious about parking at this location. Plaintiff likewise has grown worried and become distressed about the status and use of Plaintiff's private information in the possession of Defendant.

***Plaintiff Christopher Melendez***

18. Plaintiff Christopher Melendez is a natural person and citizen of the State of California. Plaintiff Melendez resides in Los Angeles in Los Angeles County, California.

19. At all relevant times herein, Plaintiff is and has been a resident of the community surrounding Defendant Century City Mall community and has often parked in the Westfield Century City parking lot.

20. Plaintiff has visited and subsequently parked in the parking lot of Westfield Century City on numerous occasions since approximately 2021, with Plaintiff's most recent parking visit occurring in or around January 2026. On multiple occasions since 2021, Plaintiff has been required to pay for parking at the Westfield Century City location parking lot.

21. Upon information and belief, Defendants' ALPR system used in Westfield parking lots, such as that at Century City Mall, has captured, documented and analyzed Plaintiff Melendez's vehicle's license plate numbers without obtaining Plaintiff's express consent, nor was Plaintiff notified of the ALPR's purpose.

22. Upon information and belief, Plaintiff Melendez did not know and was unaware of Defendants' use of ALPR systems to record and analyze Plaintiff's vehicle's license plate numbers. Likewise, Plaintiff was never presented with a notice of Defendants' ALPR practice about a) the authorized purposes for using ALPR systems; b) a description of the job title or other designation of the individuals authorized to use or access the ALPR system data; c) a description of how the ALPR system's privacy and security measures operate and record license plate data; d) training requirements for all necessary and authorized individuals with access to the license plate data; e) the title of the Custodian of the Parking Lot's ALPR data; f) a description of the reasonable measures used to ensure the accuracy of the ALPR information; and g) how long the information is retained.

23. Without knowledge or information of the ALPR systems and the safety measures put into place to protect consumer information or inform consumers what their information may be used for, Plaintiff did not and could not know the potential harm Defendants could impose by collecting his license plate information.

24. Plaintiff suffered actual damages as a result of Defendants' alleged conduct. Namely, on multiple occasions Plaintiff has paid to park at the Westfield Century City parking lot. Plaintiff has been under the belief that he paid the Westfield parking lot parking rate fee in exchange for its service in allowing Plaintiff to safely store his vehicle in the Westfield parking lot. Defendants, however, have additionally gained access to Plaintiff's personal information via the ALPR systems without notifying Plaintiff.

25. Plaintiff Melendez has additionally been harmed as a result of Defendants' conduct as alleged herein. Had Defendants chosen to disclose the use and purpose of ALPR systems within its parking lots, Plaintiff may have been more cautious about parking at this location. Plaintiff likewise has grown worried and become distressed about the status and use of Plaintiff's private information in the possession of Defendant.

***Defendants***

26. **Defendant Century City Mall, LLC** is a Delaware limited liability company and subsidiary within the Unibail-Rodamco-Westfield corporate structure, maintaining its principal place of business at 2049 Century Park East, 42nd Floor, Los Angeles, California 90067. Century City Mall, LLC is owned by Defendant Westfield, LLC, which in turn is owned by Defendant URW America, Inc., the principal U.S.-based subsidiary of Unibail-Rodamco-Westfield SE, a French commercial real estate conglomerate and the ultimate global parent company. Century City Mall, LLC owns the real property and commercial premises known as Westfield Century City, an outdoor shopping center located in Los Angeles, California.

27. **Defendant Westfield, LLC** is a Delaware limited liability company and subsidiary within the Unibail-Rodamco-Westfield corporate structure, maintaining its principal place of business at 2049 Century Park East, 42nd Floor, Los Angeles, California 90067. Westfield, LLC is owned by Defendant URW America, Inc. and functions as the primary U.S.-based Westfield brand and affiliate entity, and conducts business related to the Westfield retail brand.

28. **Defendant Westfield Property Management, LLC** is a Delaware limited liability company and subsidiary within the Unibail-Rodamco-Westfield corporate structure, maintaining its principal place of business at 2049 Century Park East, 42nd Floor, Los Angeles, California 90067. Westfield Property functions as the operating and management entity for U.S.-based Westfield-branded shopping centers and other properties, including Westfield Century City, overseeing day-to-day operations related to, among other things, maintenance coordination, security oversight, and implementation of corporate policies.

29. **Defendant URW America, Inc.** is a Delaware corporation maintaining its principal place of business at 2049 Century Park East, 42nd Floor, Los Angeles, California 90067. As the principal American subsidiary of its global parent, Unibail-Rodamco-Westfield SE, URW America, Inc. serves as the top-tier U.S. holding and

operating entity for the Unibail-Rodamco-Westfield group's American shopping center portfolio. URW America, Inc. owns Defendants Westfield, LLC and Westfield Property Management, LLC and, through those entities, Defendant Century City Mall, LLC. Through this ownership structure, URW America, Inc. maintains ultimate corporate control over the Westfield Century City mall in Los Angeles, California.

30. **Defendant SKIDATA, Inc.** is a technology company incorporated in the State of Delaware with its principal place of business located at 5090 N. 40th Street, Suite 450, Phoenix, Arizona 85018. SKIDATA, Inc. is the U.S.-based arm of its global parent, SKIDATA GmbH, an Austrian company. SKIDATA installs, configures, maintains, and operates hardware and software for ALPR systems as part of its parking access and management systems, including the ALPR parking system located at Westfield Century City mall in Los Angeles, California.

## JURISDICTION AND VENUE

31. This Court has subject matter jurisdiction over this action under Code of Civil Procedure § 395(a) and § 395.5 and Civil Code section 1780(c) because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this county.

32. This Court has personal jurisdiction over Defendant Century City because it has purposefully availed itself of the benefits and burdens of doing business in California and under California law. Century City maintains its principal place of business in Los Angeles, California, thus, exercising personal jurisdiction over it comports with traditional notions of fair play and substantial justice. Century City's cameras located in California are used to take millions of license plate scans of Californians' vehicles. Plaintiffs' claims arise out of and relate to Century City's California contacts.

33. This Court has personal jurisdiction over Defendant Westfield because it has purposefully availed itself of the benefits and burdens of doing business in California and under California law. Westfield maintains its principal place of

business in Los Angeles, California, thus, exercising personal jurisdiction over it comports with traditional notions of fair play and substantial justice. Westfield's cameras located in California are used to take millions of license plate scans of Californians' vehicles. Plaintiffs' claims arise out of and relate to Westfield's California contacts.

34. This Court has personal jurisdiction over Defendant Westfield Management because it has purposefully availed itself of the benefits and burdens of doing business in California and under California law. Westfield Management maintains its principal place of business in Los Angeles, California, thus, exercising personal jurisdiction over it comports with traditional notions of fair play and substantial justice. Westfield Management's cameras located in California are used to take millions of license plate scans of Californians' vehicles. Plaintiffs' claims arise out of and relate to Westfield Holding's California contacts.

35. This Court has personal jurisdiction over Defendant URW America because it has purposefully availed itself of the benefits and burdens of doing business in California and under California law. URW America maintains its principal place of business in Los Angeles, California, thus, exercising personal jurisdiction over it comports with traditional notions of fair play and substantial justice. URW America's cameras located in California are used to take millions of license plate scans of Californians' vehicles. Plaintiffs' claims arise out of and relate to URW America's California contacts.

36. This Court has personal jurisdiction over SKIDATA because it has purposefully availed itself of the benefits and burdens of doing business in California and under California law. SKIDATA has sufficient minimum contacts such that exercising personal jurisdiction over it comports with traditional notions of fair play and substantial justice. SKIDATA's cameras located in California are used to take millions of license plate scans of Californians' vehicles. Plaintiffs' claims arise out of and relate to SKIDATA's California contacts.

37. Venue is proper in this District under Civil Code of Procedure § 392 and Civil Code § 1780(a) because a substantial part of the events giving rise to the claims occurred in this District.

## FACTUAL ALLEGATIONS

### I. Overview of ALPR Camera Use and SB 34

38. ALPR systems combine several distinct pieces of technology.[2] In the first instance, ALPR systems photograph vehicles' license plates, and then upload the photographs to a central server. This allows operators to analyze the images using a variety of programs, algorithms, and artificial intelligence.

39. ALPR systems "automatically capture all license plate numbers that come into view, along with the location, date, and time" at which the ALPR captured the plate.[3] Some systems also identify a vehicle's make and model, and/or photograph vehicle occupants. Over time, this aggregated data can be used to record and predict an individual's behavior and movements.

40. The California State Legislature has recognized that the "increasing use of computers and other sophisticated information technology has greatly magnified the potential risk to individual privacy that can occur from the maintenance of personal information," and that the "right to privacy is being threatened by the indiscriminate collection, maintenance, and dissemination of personal information and the lack of effective laws and legal remedies." Cal. Civ. Code § 1798.1 (a)—(b).

41. In response to the growing implementation of ALPR technology, the legislature passed SB 34 to place strict guardrails on how ALPR operators and end-users handle the sensitive data they collect.

42. Pursuant to Cal. Civ. Code § 1798.90.51, an ALPR operator is required to:

---

[2] *Automatic License Plate Readers*, ELEC. FRONTIER FOUND.: ST. LEVEL SURVEILLANCE, https://sls.eff.org/technologies/automated-license-plate-readers-alprs (last visited March 6, 2026).

[3] *Id.*

(a) Maintain reasonable security procedures and practices, including operational, administrative, technical, and physical safeguards, to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure.

(b)(1) Implement a usage and privacy policy in order to ensure that the collection, use, maintenance, sharing, and dissemination of ALPR information is consistent with respect for individuals' privacy and civil liberties. The usage and privacy policy shall be available to the public in writing, and, if the ALPR operator has an Internet Web site, the usage and privacy policy shall be posted conspicuously on that Internet Web site.

(2) The usage and privacy policy shall, at a minimum, include all of the following:

(A) The authorized purposes for using the ALPR system and collecting ALPR information.

(B) A description of the job title or other designation of the employees and independent contractors who are authorized to use or access the ALPR system, or to collect ALPR information. The policy shall identify the training requirements necessary for those authorized employees and independent contractors.

(C) A description of how the ALPR system will be monitored to ensure the security of the information and compliance with applicable privacy laws.

(D) The purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information to other persons.

(E) The title of the official custodian, or owner, of the ALPR system responsible for implementing this section.

(F) A description of the reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors.

(G) The length of time ALPR information will be retained, and the process the ALPR operator will utilize to determine if and when to destroy retained ALPR information.

43. Additionally, pursuant to Cal. Civ. Code § 1798.90.53, an ALPR end-user shall:

> (a) Maintain reasonable security procedures and practices, including operational, administrative, technical, and physical safeguards, to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure.
>
> (b)(1) Implement a usage and privacy policy in order to ensure that the access, use, sharing, and dissemination of ALPR information is consistent with respect for individuals' privacy and civil liberties. The usage and privacy policy shall be available to the public in writing, and, if the ALPR end-user has an Internet Web site, the usage and privacy policy shall be posted conspicuously on that Internet Web site.
>
> (2) The usage and privacy policy shall, at a minimum, include all of the following:
>
> (A) The authorized purposes for accessing and using ALPR information.
>
> (B) A description of the job title or other designation of the employees and independent contractors who are authorized to access and use ALPR information. The policy shall identify the training requirements necessary for those authorized employees and independent contractors.
>
> (C) A description of how the ALPR system will be monitored to ensure the security of the information accessed or used, and compliance with all applicable privacy laws and a process for periodic system audits.
>
> (D) The purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information to other persons.
>
> (E) The title of the official custodian, or owner, of the ALPR system responsible for implementing this section.
>
> (F) A description of the reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors.
>
> (G) The length of time ALPR information will be retained, and the

process the ALPR end-user will utilize to determine if and when to destroy retained ALPR information.

## II. SKIDATA's ALPR Technology and URW's Surveillance System

44. SKIDATA configures, installs, maintains, and operates ALPR systems to be used in, among other contexts, monitoring vehicles entering, exiting, and parking in car parks, parking lots, and garages.

45. The ALPR technology operated by Defendants is used to monitor parking lots and garages at URW's commercial real estate properties, including at its mall locations throughout California. According to URW's ALPR Usage and Privacy Policy ("ALPR Policy"), it uses ALPR technology to prevent customers from paying an incorrect fee and reduce customer wait time when exiting the property.[4]

46. The ALPR Policy also states that "URW and its ALPR system vendors utilize physical access controls, digital permission controls, and other technological, procedural, and operational security measures to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure."[5]

47. The ALPR names the Century City Mall's General Manager as the "official custodian" of the ALPR information collected by URW, and lists the personnel and employees of SKIDATA, LAZ Parking Management, Park Assist, and Century City Mall's Management and Security as parties "authorized to access and use the ALPR System(s)."[6]

## III. URW and SKIDATA are ALPR Operators and End-users Under SB 34

48. An ALPR operator is defined as "a person that operates an ALPR system, but does not include a transportation agency when subject to Section 31490 of the Streets and Highways Code." Cal. Civ. Code § 1798.90.5(c). "Though California courts have not yet specifically elucidated the meaning of 'operator' under the ALPR

---

[4] ALPR Policy, *supra* note 1.

[5] *Id.*

[6] *Id.*

statute, typically, 'operate' means to 'control,' 'manage,' or 'have active involvement' in running the activities in question." *Navarro v. Data*, No. 2:20-CV-07370-SVW-SK, 2022 WL 18280359, at *5 (C.D. Cal. Dec. 7, 2022).

49. An ALPR end-user is defined as "a person that accesses or uses an ALPR system," with three categories of exceptions that do not apply to Defendants here. Cal. Civ. Code § 1798.90.5(a).

50. URW is an ALPR operator. Its ALPR Policy indicates that "Unibail-Rodamco-Westfield ('URW') utilizes automated license plate recognition ('ALPR') technology at Westfield UTC (the 'Center')" and lists the purposes that "ALPR information may accessed, and used" for, including preventing customers from paying an incorrect fee and reducing customer wait time when exiting the property.[7] URW controls, manages, and has active involvement in the data collection of its ALPR systems because it determines where and when the data is collected, which employees can access the data, and for which purposes the data can be accessed.

51. URW is an ALPR end-user because it accesses and uses its ALPR systems. Its ALPR Policy states "URW and its ALPR system vendors utilize physical access controls, digital permission controls, and other technological, procedural, and operational security measures to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure."[8]

52. SKIDATA is an ALPR operator because it controls, manages, and/or has active involvement in the ALPR systems it installed and maintains at URW's properties. URW's ALPR Policy states that vendors like SKIDATA "utilize physical access controls, digital permission controls, and other technological, procedural, and operational security measures to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure" and "conduct periodic audits of the

---

[7] *Id.*

[8] *Id.*

ALPR system(s) in order to ensure the accuracy of the system(s)."[9] SKIDATA has an active involvement in the various controls and security measures for which the ALPR policy has assigned it responsibility.

53. SKIDATA is an ALPR end-user because it accesses and uses the ALPR systems it installed and maintains at URW's properties. It is listed in the ALPR Policy as a party "authorized to access and use the ALPR System(s)." Additionally, the ALPR Policy states that vendors like SKIDATA "utilize physical access controls, digital permission controls, and other technological, procedural, and operational security measures to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure" and "conduct periodic audits of the ALPR system(s) in order to ensure the accuracy of the system(s)." SKIDATA needs access to the data and uses the data in order to fulfill those responsibilities.[10]

54. Because URW and SKIDATA are ALPR operators and end-users, they are legally obligated to comply with all the requirements imposed by Cal. Civ. Code §§ 1798.90.51 and 1798.90.53.

## IV. SKIDATA Does Not Have a Statutory-Compliant Usage and Privacy Policy

55. On its website, SKIDATA has a "Data Privacy" page meant to "inform you which types of your personal data . . . we process for which purposes and in which scope. The privacy statement applies to all processing of personal data carried out by us, both in the context of providing our services and in particular on our websites, in mobile applications and within external online presences, such as our social media profiles[.]"[11]

56. However, this page does not satisfy SKIDATA's statutory requirements to maintain an ALPR usage and privacy policy. SKIDATA's Data Privacy page

---

[9] *Id.*

[10] *Id.*

[11] Data Privacy, SKIDATA, https://www.skidata.com/data-privacy (last accessed March 6, 2026).

makes no mention of its ALPR systems. SKIDATA does not have a public ALPR-specific usage and privacy policy, and the Data Privacy page does not include an ALPR-specific section or include the requirements imposed by Cal. Civ. Code §§ 1798.90.51 and 1798.90.53. In fact, the terms "ALPR," "license," and "plate" do not appear anywhere on the Data Privacy page.

57. Due to its positions as an ALDR operator and end-user, SKIDATA is obligated to implement, make available to the public in writing, and post conspicuously on its website a usage and privacy policy that includes the following bolded items. It fails to do so for each one.

> **(a) The authorized purposes for using the ALPR system and collecting, accessing, and using ALPR information**. The Data Privacy page has a "Purposes of Processing" section enumerating 17 different purposes for which SKIDATA may use the data it possesses, including line items like provision of contractual services and customer support, direct marketing, web analytics, conversion tracking, job application process, conducting sweepstakes and contests, and provision of online services and usability.[12] It does not specify which of these purposes apply to ALPR data collected from Plaintiffs and Class members, and most of them clearly cannot and do not apply.
>
> **(b) A description of the job title or other designation of the employees and independent contractors who are authorized to use or access the ALPR system, or to collect ALPR information. The policy shall identify the training requirements necessary for those authorized employees and independent contractors.** The Data Privacy Page lists SKIDATA as the "Controller" of all data, and names Michael Gradnitzer as the "Authorized Representative." There are no other employees or independent contractors named that may have access to the ALPR system or data. There is no mention of any kind of training program.
>
> **(c) A description of how the ALPR system will be monitored to ensure the security of the information and compliance with applicable privacy laws and a process for periodic system audits.** There is no description of how the ALPR system will be monitored

[12] *Id.*

because there is no mention of the ALPR systems at all. There is no mention of compliance with any California law.

**(d) The purposes of, process for, and restrictions on, the sale, sharing, or transfer of ALPR information to other persons.** Without mentioning ALPR information specifically, the policy broadly states "In the context of our processing of personal data, it may happen that the data is transferred to other places, companies or persons or that it is disclosed to them. Recipients of this data may include, for example, service providers commissioned with IT tasks or providers of services and content that are embedded in a website. In such a case, the legal requirements will be respected and in particular corresponding contracts or agreements, which serve the protection of your data, will be concluded with the recipients of your data." The policy only gives one example of a purpose for which data may be shared, and provides no information of the processes and restrictions on sharing data except to say "the legal requirements will be respected." That falls far short of the statutory requirement.

**(e) The title of the official custodian, or owner, of the ALPR system responsible for implementing this section.** The Data Privacy policy makes no mention of any custodian, owner, employee, or any other person or entity responsible for the ALPR systems.

**(f) A description of the reasonable measures that will be used to ensure the accuracy of ALPR information and correct data errors.** The Data Privacy policy makes no mention of ALPR information or any measures that SKIDATA takes to ensure the accuracy of ALPR data and correct data errors.

**(g) The length of time ALPR information will be retained, and the process the ALPR operator will utilize to determine if and when to destroy retained ALPR information.** The Data Privacy policy states "The data processed by us will be erased in accordance with the statutory provisions as soon as their processing is revoked or other permissions no longer apply." The section makes no mention of California law, and the only reference to statutory provisions are those that fall under European Union law. And, there is no mention of the length of time that ALPR information will be retained, or the process the ALPR operator will utilize to determine if and when to destroy the data.

58. SKIDATA lacks an ALPR usage and privacy policy that meets any of the statutory requirements. Its Data Privacy policy also does not contain any of the information required by the law. In shirking these duties as an ALPR operator and end-user, SKIDATA is in violation of Cal. Civ. Code §§ 1798.90.51 and 1798.90.53.

**V. URW Does Not Have a Statute-Compliant Usage and Privacy Policy**

59. While URW does have an ALPR Policy posted on its webpage, the policy does not fully comply with the duties required of them under Cal. Civ. Code §§ 1798.90.51 and 1798.90.53.

60. URW's ALPR Policy does not include a description of the job title or other designation of the employees and independent contractors authorized to use or access the ALPR system, or to collect ALPR information. It also does not identify the training requirements necessary for those authorized employees and independent contractors, or state that they are trained at all.

> B. Access and Use of the ALPR System(s)
>
> The following parties are authorized to access and use the ALPR System(s):
>
> SKIDATA, Inc./Sentry Control Systems Personnel;
> LAZ Parking Management Personnel; and
> INDECT Personnel

61. Nor does URW's ALPR Policy provide a description of the reasonable measures used to ensure the accuracy of the ALPR information and correct data errors. It merely states that "Reasonable technical measures, including regular testing, are utilized in order to ensure the accuracy of ALPR information."

> F. Data Accuracy
>
> Reasonable technical measures, including regular testing, are utilized in order to ensure the accuracy of ALPR information.

62. Nor does URW's ALPR Privacy Policy explain the process that URW

will utilize to determine if and when to destroy retained ALPR information.

G. Data Retention

ALPR information is retained for a period of 30 days unless increased due to legal obligations.

63. This missing information from URW's ALPR Policy constitutes a violation of Cal. Civ. Code §§ 1798.90.51 and 1798.90.53 and URW's duties as an ALPR operator and end-user.

## VI. Defendants Do Not Maintain Reasonable Security Procedures and Practices

64. Defendants do not maintain reasonable security procedures and practices because they share the ALPR data they collect and maintain with entities—each other—that are in violation of Cal. Civ. Code §§ 1798.90.51 and 1798.90.53 due to their lack of compliant usage and privacy policies. In doing so, they violate Cal. Civ. Code §§ 1798.90.51(a) and 1798.90.53(a).

65. The law requires Defendants to "[m]aintain reasonable security procedures and practices, including operational, administrative, technical, and physical safeguards, to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure." Cal. Civ. Code §§ 1798.90.51(a) and 1798.90.53(a).

66. Entities that access, destroy, use, modify, or disclose ALPR information are, by definition, ALPR operators and/or end-users mandated to comply with the usage and privacy policy mandates contained in Cal. Civ. Code §§ 1798.90.51(b) and 1798.90.53(b).

67. If an ALPR operator or end-user fails to comply with its notice and privacy policy obligations, then access, destruction, use, modification, or disclosure of ALPR data to or by that entity is unauthorized under the law.

68. URW and SKIDATA knew or should have known that they failed to

adequately comply with their respective notice and privacy policy duties, and thus, access, destruction, use, modification, or disclosure of ALPR data to or by URW and SKIDATA was unauthorized under the law.

69. These unauthorized disclosures of ALPR data are a failure to maintain reasonable security procedures and practices and safeguards in violation of Cal. Civ. Code §§ 1798.90.51(a) and 1798.90.53(a).

## CLASS ALLEGATIONS

70. ***Class Definition.*** Plaintiffs bring this action pursuant to California Code of Civil Procedure section 382 and Civil Code section 1780(a) on behalf of themselves and the Class, defined as follows:

> All persons whose license plate data was collected by Defendants URW and SKIDATA in the State of California using an automatic license plate reader operated by Defendants URW and SKIDATA during the two-year period prior to the commencement of this action. (the "Class Period").

71. Excluded from the Class are: (1) any Judge presiding over this action and members of their immediate families; (2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which Defendants or their parents have a controlling interest and its officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiffs' counsel and Defendants' counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

72. ***Numerosity.*** The exact number of Class Members is unknown and not available to Plaintiffs at this time, but individual joinder is impracticable. On information and belief, URW and SKIDATA have photographed the license plates and time-stamped geolocation data of hundreds of thousands if not millions of drivers in California. Class Members may be notified of the pendency of this action by mail,

email, and/or publication.

73. ***Ascertainability.*** The proposed class is ascertainable because Class Members can be easily identified through Defendants' records. Indeed, SKIDATA's entire business model revolves around capturing the identities of individuals via their license plates.

74. ***Commonality and Predominance.*** Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members. These common legal and factual questions include, but are not limited to:

- Whether URW is an "automated license plate recognition operator" as defined by Cal. Civ. Code § 1798.90.5(c);
- Whether URW is an "automated license plate recognition end-user" as defined by Cal. Civ. Code § 1798.90.5(a);
- Whether URW's usage and privacy policy includes all the elements required by Cal. Civ. Code §§ 1798.90.51(b)(2) and 1798.90.53(b)(2);
- Whether SKIDATA is an "automated license plate recognition end-user" as defined by Cal. Civ. Code § 1798.90.5(a);
- Whether SKIDATA is an "automated license plate recognition operator" as defined by Cal. Civ. Code § 1798.90.5(c);
- Whether SKIDATA has implemented a usage and privacy policy, available to the public in writing, posted on its website, and including all the elements required by Cal. Civ. Code §§ 1798.90.51(b)(2) and 1798.90.53(b)(2);
- Whether SKIDATA's lack of a public usage and privacy policy is a violation of Cal. Civ. Code §§ 1798.90.51(b)(2)

and 1798.90.53(b)(2);

- Whether URW has disclosed protected ALPR information to SKIDATA;
- Whether URW's disclosure of ALPR information to SKIDATA constitutes unauthorized access, destruction, use, modification, or disclosure, in violation of Cal. Civ. Code §§ 1798.90.51(a) and 1798.90.53(a);
- Whether Plaintiffs and Class Members have been harmed and the proper measure of relief; and
- Whether Plaintiffs and the Class are entitled to attorney's fees and costs.

75. ***Typicality.*** Plaintiffs' claims are typical of the claims of the proposed Class they seek to represent because Plaintiffs, like all members of the Class, had their privacy and PII compromised by Defendants' lack of compliance with Cal. Civ. Code § 1798.90 *et seq.* The representative Plaintiffs, like all members of the Class, have been injured by the Defendants' misconduct in the very same way as the members of the Class. Further, the factual bases of the Defendants' misconduct are common to all members of the Class and represent a common thread of misconduct resulting in injury to all members of the Class.

76. ***Adequacy.*** Plaintiffs are adequate representatives of the Class because their interests do not conflict with the interests of the members of the Class, they have retained counsel competent and experienced in prosecuting class actions, and they intend to prosecute this action vigorously. The interests of the members of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

77. ***Superiority.*** A class action is superior to other available means for the fair and efficient adjudication of the claims of the members of the Class. Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary

to establish the Defendants' liability. Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case. Individualized litigation also represents a potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of the Defendants' liability. Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

78. Defendants have acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class as a whole.

79. Without a class action, Defendants will continue a course of action that will result in further damages to the Plaintiffs and Class Members and will likely retain the benefit of wrongdoing.

80. Plaintiffs reserve their right to revise the foregoing class allegations and class definition based on facts learned through additional investigation and/or the discovery process.

## CAUSES OF ACTION

## COUNT I

### Violation of Cal. Civ. Code §§ 1798.90.5 *et seq.*
### Failure to Implement a Code Compliant Usage and Privacy Policy
### (On Behalf of Plaintiffs and the Class Against URW Defendants)

81. Plaintiffs re-allege the foregoing paragraphs as though fully restated herein.

82. Plaintiffs bring this claim on behalf of themselves and members of the proposed Class against the URW Defendants.

83. Plaintiffs Buchanan and Melendez are natural persons and thus

"individuals" as defined by Cal. Civ. Code § 1798.90.5(e).

84. Each URW Defendant is an "ALPR operator" as defined by Cal. Civ. Code § 1798.90.5(c) because, per URW's ALPR Policy, the "Official Custodian" of the ALPR information is the Center General Manager,[13] as well as for the reasons explained above.

85. Each URW Defendant is an "ALPR end-user" as defined by Cal. Civ. Code § 1798.90.5(a) because, per URW's ALPR Policy, "Unibail-Rodamco-Westfield ('URW') utilizes automated license plate recognition ('ALPR') technology at Westfield UTC (the 'Center')"[14] as well as for the reasons explained above.

86. The URW Defendants' ALPR Privacy Policy does not include a description of the job title or other designation of the employees and independent contractors who are authorized to use or access the ALPR system, or to collect ALPR information. It also does not identify the training requirements necessary for those authorized employees and independent contractors.

87. The URW Defendants' ALPR Privacy Policy also does not provide a description of the reasonable measures used to ensure the accuracy of the ALPR information and correct data errors.

88. The URW Defendants' ALPR Privacy Policy does not explain the process that URW will utilize to determine if and when to destroy retained ALPR information.

89. The purpose of a code compliant usage and privacy policy is "to ensure that the collection, use, maintenance, sharing, and dissemination of ALPR information is consistent with respect for individuals' privacy and civil liberties." Cal. Civ. Code § 1798.90.51(b)(1).

90. The URW Defendants failed to (1) provide a description of the job title

---

[13] ALPR Policy

[14] *Id.*

or other designation of the employees and independent contractors who are authorized to use or access the ALPR system or to collect ALPR information; (2) notify the public of the training requirements necessary for those authorized employees and independent contractors; (3) describe to the public the reasonable measures used to ensure the accuracy of the ALPR information and correct data errors; and (4) explain the process that URW will utilize to determine if and when to destroy retained ALPR information.

91. Plaintiffs and Class Members have been harmed by the URW Defendants' conduct because the URW Defendants insufficiently protected their private and sensitive PII and put their PII at risk of being collected, used, maintained, shared, and disseminated by unauthorized persons and entities.

92. The URW Defendants' conduct violates Cal. Civ. Code §§ 1798.90.51(b)(2) and 1798.90.53(b)(2).

93. Pursuant to Cal. Civ. Code § 1798.90.54, Plaintiffs and Class Members are entitled to the greater of actual damages or $2,500 per violation; punitive damages; reasonable attorneys' fees and litigation costs; and any other preliminary and equitable relief the court deems appropriate.

## <u>COUNT II</u>

### Violation of Cal. Civ. Code §§ 1798.90.5 *et seq.*
### Failure to Implement a Code Compliant Usage and Privacy Policy
### (On Behalf of Plaintiffs and the Class Against Defendant SKIDATA)

94. Plaintiffs re-allege the foregoing paragraphs as though fully restated herein.

95. Plaintiffs bring this claim on behalf of themselves and members of the proposed Class against SKIDATA.

96. Defendant SKIDATA is an "ALPR operator" as defined by Cal. Civ. Code § 1798.90.5(c) because, per URW's ALPR Privacy Policy, SKIDATA "utilize[s] physical access controls, digital permission controls, and other

technological, procedural, and operational security measures to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure,"[15] as well as for reasons described above.

97. Defendant SKIDATA is an "ALPR end-user" as defined by Cal. Civ. Code § 1798.90.5(a) because, per URW's ALPR Privacy Policy, SKIDATA is "authorized to access and use the ALPR System(s)."[16]

98. Defendant SKIDATA does not have any ALPR usage and privacy policy posted on its website.

99. Plaintiffs have not been able to verify that SKIDATA has an ALPR usage and privacy policy at all.

100. Because SKIDATA does not have a public ALPR policy, SKIDATA put Plaintiffs and Class Members at unreasonable risk of unauthorized collection, use, maintenance, sharing, and dissemination of their PII.

101. Plaintiffs and Class Members have been harmed by Defendant SKIDATA's conduct because SKIDATA insufficiently protected their private and sensitive PII and put their PII at risk of being collected, used, maintained, shared, and disseminated by unauthorized persons and entities.

102. Defendant SKIDATA's conduct violates Cal. Civ. Code §§ 1798.90.51(b)(2) and 1798.90.53(b)(2).

103. Pursuant to Cal. Civ. Code § 1798.90.54, Plaintiffs and Class Members are entitled to the greater of actual damages or $2,500 per violation; punitive damages; reasonable attorneys' fees and litigation costs; and any other preliminary and equitable relief the court deems appropriate.

## COUNT III

### Violation of Cal. Civ. Code §§ 1798.90.5 *et seq.*
### Unlawful Sharing of ALPR Data

---

[15] *Id.*

[16] *Id.*

**(On Behalf of Plaintiffs and the Class Against All Defendants)**

104. Plaintiffs re-allege the foregoing paragraphs as though fully restated herein.

105. Plaintiffs bring this claim on behalf of themselves and members of the proposed Class against Defendants.

106. Defendants are ALPR operators and end-users for the reasons explained above.

107. Cal. Civ. Code §§ 1798.90.51(a) and 1798.90.53(a) require Defendants to "Maintain reasonable security procedures and practices, including operational, administrative, technical, and physical safeguards, to protect ALPR information from unauthorized access, destruction, use, modification, or disclosure."

108. Only entities that follow the provisions outlined in Cal. Civ. Code §§ 1798.90.51(b) and 1798.90.53(b)—those that detail the requirements of an ALPR usage and privacy policy—are authorized to access, destruction, use, modification, or disclosure of information. This is because the ability to do any of these actions makes an entity either an ALPR operator or end-user (or both).

109. By sharing information between each other, URW and SKIDATA have failed to protect ALPR information from unauthorized access, destruction, use, modification, and/or disclosure because Defendants fail to maintain adequate ALPR usage and privacy policies to ensure the safety of the data.

110. Plaintiffs and Class Members have been harmed by Defendants' conduct because Defendants insufficiently protected their Private Information and put this data at risk of being collected, used, maintained, shared, and disseminated by unauthorized persons and entities.

111. Defendants' conduct violates Cal. Civ. Code §§ 1798.90.51(a) and 1798.90.53(a).

112. Pursuant to Cal. Civ. Code § 1798.90.54, Plaintiffs and Class Members are entitled to the greater of actual damages or $2,500 per violation; punitive damages;

reasonable attorneys' fees and litigation costs; and any other preliminary and equitable relief the court deems appropriate.

**<u>COUNT IV</u>**

**Violations of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code §§ 17200 *et seq.* ("UCL")**
**(On Behalf of Plaintiffs and the Class Against All Defendants)**

113. Plaintiffs re-allege the foregoing paragraphs as though fully restated herein.

114. California Business & Professions Code Section 17200 prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

115. Plaintiffs bring claims under the UCL's unfair and unlawful prongs.

116. Defendants' conduct constitutes "unfair" business acts and practices within the meaning of the UCL, in that their conduct was injurious to Plaintiffs and Class Members, offended public policy, and was unethical and unscrupulous. Defendants' violation of Plaintiffs' and Class Members' privacy rights by inadequately protecting their PII and privacy resulted in injury.

117. Defendants' conduct was unfair because they knew or should have known that they were collecting and sharing sensitive private information and continued to do so anyway despite knowing about the consumers' privacy rights and the harms that could result by failing to maintain an adequate usage and privacy policy, and by sharing information with entities they knew had inadequate—or no—usage and privacy policies.

118. Plaintiffs also allege a violation under the "unlawful" prong of the UCL because Defendants' conduct violated SB 34 and Cal. Civ. Code. §§ 1798.90.51(b)(1), (b)(2)(C).

119. Plaintiffs and Class Members have suffered an injury in fact as a proximate result of the violations of law and wrongful conduct of Defendants alleged

herein, and they lack an adequate remedy at law to address the unfair conduct at issue here.

120. Plaintiffs seek an injunction prohibiting Defendants' ongoing violations of the UCL.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, seeks judgment against Defendants as follows:

a) For an order certifying the Class and naming Plaintiffs' attorneys as Class Counsel to represent the members of the Class;

b) For an order declaring that Defendants' conduct violates the statutes referenced herein;

c) For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury, but no less than $2,500 for each violation of Cal. Civ. Code § 1798;

d) For costs of suit herein;

e) For both pre- and post-judgment interest on any amounts awarded;

f) For punitive and exemplary damages;

g) For an order of restitution and all other forms of equitable monetary relief;

h) For an order requiring Defendants to undertake a corrective action;

i) For an order awarding Plaintiffs and Class Members their reasonable attorneys' fees, expenses, and costs of suit; and

j) For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

Dated: June 22, 2026

Respectfully submitted,

*/s/ Robert Ahdoot*

Robert Ahdoot (SBN 172098)
rahdoot@ahdootwolfson.com
**AHDOOT & WOLFSON, PC**
2600 W. Olive Ave. Suite 500
Burbank, CA 91505
Tel: (310) 474-9111

Andrew W. Ferich*
aferich@ahdootwolfson.com
Brian Devall*
bdevall@ahdootwolfson.com
**AHDOOT WOLFSON PC**
201 King of Prussia Road, Suite 650
Radnor, PA 15701
Tel: 310.474.9111

Jonathan Shub (SBN 237708)
jshub@shublawyers.com
Benjamin F. Johns*
bjohns@shublawyers.com
Samantha E. Holbrook*
sholbrook@shublawyers.com
Deirdre R. Mulligan*
dmulligan@shublawyers.com
**SHUB JOHNS & HOLBROOK LLP**
Four Tower Bridge,
200 Barr Harbor Drive, Suite 400
West Conshohocken, PA 19428
Tel: 610.477.8380

*Attorneys for Plaintiffs and the proposed Class*

**Pro Hac Vice Forthcoming*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CHASE BUCHANAN, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>CENTURY CITY MALL, LLC; WESTFIELD, LLC; WESTFIELD PROPERTY MANAGEMENT, LLC; URW AMERICA, INC. and SKIDATA, INC.;<br>Defendants. | Case No.: 2:26-cv-04324–SVW–SK<br><br>AMENDED CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

I, Robert Ahdoot, hereby certify that on the 22nd day of June 2026, the foregoing Amended Class Action Complaint was served on all counsel of record via this Court's ECF system.

DATED: June 22, 2026

Respectfully Submitted

/s/ Robert Ahdoot
Robert Ahdoot